JESSICA OQUENDO-LORENZO, *et al.*,

    Plaintiffs,

    v.                             Civil No. 15-1413 (BJM)

HOSPITAL SAN ANTONIO, INC., *et al.*,

    Defendants.

## OPINION AND ORDER

This case presents thorny statutory construction issues relating to a Puerto Rico statute governing the extent of liability in certain medical malpractice actions. Jessica Oquendo-Lorenzo, Rolando Lopez-Montanez, and their conjugal partnership (collectively, "Oquendo") allege medical malpractice in this diversity tort action, and seek seven-figure money damages from the Hospital San Antonio, Inc. ("Hospital" or "Hospital San Antonio"), Dr. Osvaldo Quiles-Giovannetti ("Dr. Quiles"), and their insurance carriers. Docket No. 22. The Hospital moved for partial summary judgment, asserting that a Puerto Rico statute caps any potential damages award. Docket Nos. 56, 61, 80, 96. And Dr. Quiles moved to dismiss the claims against him, contending that this same Puerto Rico statute grants him absolute immunity when a suit arises from the performance of his duties at the Hospital. Docket Nos. 59, 96. Oquendo primarily responds that the Puerto Rico statute cited by both the Hospital and Dr. Quiles does not entitle them to the relief they request. Docket Nos. 71, 72-1, 98. This case is before me on consent of the parties. Docket No. 47.

For the reasons set forth below, the defendants' motions are **DENIED**.

## APPLICABLE STANDARDS

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "an adequate complaint must provide fair notice to the defendants and state a facially plausible legal claim." *Ocasio-Hernández* v. *Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011). To do so, the complaint must set forth "factual allegations, either direct or inferential, regarding

each material element necessary" for the action. *Gooley* v. *Mobil Oil Corp.*, 851 F.2d 513, 514 (1st Cir. 1988). When evaluating the complaint, the court first discards any "'legal conclusions couched as fact' or 'threadbare recitals of the elements of a cause of action.'" *Ocasio-Hernández*, 640 F.3d at 12 (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 555 (2007)). The remaining "[n]on-conclusory factual allegations" are fully credited, "even if seemingly incredible." *Ocasio-Hernández*, 640 F.3d at 12. The court engages in no fact-finding when considering the motion, and does not "forecast a plaintiff's likelihood of success on the merits." *Id.* at 13. Rather, the court presumes that the facts are as properly alleged by the plaintiff, and draws all reasonable inferences in the plaintiff's favor. *Schatz* v. *Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012).

Summary judgment, on the other hand, is appropriate when the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" only if it "is one that could be resolved in favor of either party." *Calero-Cerezo* v. *U.S. Dep't of Justice*, 355 F.3d 6, 19 (1st Cir. 2004). A fact is "material" only if it "might affect the outcome of the suit under the governing law." *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party has the initial burden of "informing the district court of the basis for its motion, and identifying those portions" of the record "which it believes demonstrate the absence" of a genuine dispute of material fact. *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 323 (1986).

The court does not act as trier of fact when reviewing the parties' submissions and so cannot "superimpose [its] own ideas of probability and likelihood (no matter how reasonable those ideas may be) upon" conflicting evidence. *Greenburg* v. *P.R. Mar. Shipping Auth.*, 835 F.2d 932, 936 (1st Cir. 1987). Rather, the court must "view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." *Griggs-Ryan* v. *Smith*, 904 F.2d 112, 115 (1st Cir. 1990). And the court may not grant summary judgment "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

Because the resolution of the motions before the court turns on threshold issues of statutory construction, the same result follows regardless of whether the motions are evaluated under the rubric of the motion-to-dismiss standard or the summary-judgment standard. *See, e.g.*, *Air Courier Conference of Am./Int'l Comm.* v. *U.S. Postal Serv.*, 959 F.2d 1213, 1217 (3d Cir. 1992); *BLE Int'l Reform Comm.* v. *Sytsma*, 802 F.2d 180, 183 (6th Cir. 1986).

## BACKGROUND[1]

Oquendo was pregnant in early July 2013, and she visited Dr. Quiles for a prenatal examination on July 3, 2013. SUF ¶ 6; OSF ¶ 6. The Hospital, which is located in Mayaguez, granted Dr. Quiles (a surgeon specializing in obstetrics-gynecology) privileges to admit patients to the Hospital, and Dr. Quiles ordered Oquendo's admission thereto after the prenatal examination. SUF ¶¶ 4, 6, 8, 9; OSF ¶¶ 4, 6, 8, 9; Docket No. 59 ¶ 2. The following day, Dr. Quiles ordered, and participated in, a caesarean section that led to the birth of Oquendo's daughter—J.L.O. SUF ¶¶ 10, 11; OSF ¶¶ 10, 11; Docket No. 72-6 at 3.

J.L.O., who was admitted to the neonatal intensive care unit ("NICU") at the Hospital, suffered from various complications, and so she was transferred to the University Pediatric Hospital at Centro Medico in San Juan. SUF ¶ 12; OSF ¶ 12; Docket No. 72-6 at 1. Oquendo was discharged from the Hospital on July 8. SUF ¶ 13; OSF ¶ 13. J.L.O., on the other hand, remained hospitalized until January 2014. ASF ¶ 50 Docket No. 72-7 at 5. In August 2014, J.L.O. passed away after being admitted to the Hospital Menonita de

---

[1] Except where otherwise noted, the following facts are drawn from the parties' Local Rule 56 submissions: The Hospital's Statement of Uncontested Facts ("SUF"), Docket No. 57; Oquendo's Opposing Statement of Facts ("OSF"), Docket No. 72-2 at 1–8; Oquendo's Additional Statement of Facts ("ASF"), Docket No. 72-2 at 8–20; and the Hospital's Reply Statement of Facts ("RSF"), Docket No. 80. Local Rule 56 is designed to "relieve the district court of any responsibility to ferret through the record to discern whether any material fact is genuinely in dispute." *CMI Capital Market Inv.* v. *Gonzalez-Toro*, 520 F.3d 58, 62 (1st Cir. 2008). It requires a party moving for summary judgment to accompany its motion with a brief statement of facts, set forth in numbered paragraphs and supported by citations to the record, that the movant contends are uncontested and material. D.P.R. Civ. R. 56(b), (e). The opposing party must admit, deny, or qualify those facts, with record support, paragraph by paragraph. *Id.* 56(c), (e). The opposing party may also present, in a separate section, additional facts, set forth in separate numbered paragraphs. *Id.* 56(c).

Cayey. ASF ¶ 52; Docket No. 72-2 at 5–6. J.L.O.'s parents allege that various negligent acts of Dr. Quiles and the Hospital's medical staff resulted in J.L.O.'s birth injuries and subsequent death, and demand millions of dollars in compensation. SUF ¶ 1; OSF ¶ 1.

## DISCUSSION

The Hospital contends that Article 41.050 of the Puerto Rico Insurance Code ("Article 41.050"), P.R. Laws Ann. tit. 26, § 4105, limits Oquendo's potential recovery of money damages from the Hospital to the amounts set by Puerto Rico Law 104 of 1955 ("Law 104"), P.R. Laws Ann. tit. 32, § 3077. And Dr. Quiles contends that Article 41.050 immunizes him from suit in this medical malpractice action because the case arises from the performance of his duties at the Hospital San Antonio.

Under Puerto Rico law, which governs this diversity tort action, medical malpractice cases are governed by Article 1802 of the Puerto Rico Civil Code ("Article 1802"). P.R. Laws Ann. tit. 31, § 5141; *see also Martinez-Serrano* v. *Quality Health Servs. of P.R., Inc.*, 568 F.3d 278, 285 (1st Cir. 2009); *Ramos Lozada* v. *Orientalist Rattan Furniture Inc.*, 130 D.P.R. 712, 728 n.10 (1992). Article 1802 provides that "[a] person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done." P.R. Laws Ann. tit. 31, § 5141. Article 1802 requires the plaintiff in a medical malpractice action to establish "the duty owed, the occurrence of an act or omission constituting a breach of that duty, and a sufficient causal nexus between the breach and some resultant harm." *See, e.g.*, *Martinez-Serrano*, 568 F.3d at 285. Article 1803 of the Puerto Rico Civil Code ("Article 1803"), P.R. Laws Ann. tit. 31, § 5142, "embodies the principle of respondeat superior, and provides, inter alia, that '[t]he obligation imposed by § 5141 of this title is demandable, not only for personal acts and omissions, but also for those of the persons for whom they should be responsible.'" *Rivera* v. *Centro Medico de Turabo, Inc.*, 575 F.3d 10, 14 (1st Cir. 2009); *see also De La Cruz* v. *United States*, 656 F. Supp. 575, 579–80 (D.P.R. 1987) (per Article 1803, "a hospital may be liable for the medical malpractice of its physicians under a theory of vicarious liability").

At this stage, neither the Hospital nor Dr. Quiles contend that Oquendo cannot meet the requirements of a medical malpractice action under Articles 1802 or 1803. Rather, the Hospital contends that Article 41.050 creates a statutory cap on money damages that may be recovered from the Hospital, and Dr. Quiles contends that this same statute grants him absolute immunity from suit in this case. To determine whether Article 41.050 grants either defendant the relief sought, it is necessary to employ the "traditional tools of statutory construction." *See L.S. Starrett Co.* v. *FERC*, 650 F.3d 19, 25 (1st Cir. 2011) ("traditional tools of statutory construction" include "a consideration of the language, structure, purpose, and history of the statute") (quoting *In re Hill*, 562 F.3d 29, 34 (1st Cir. 2009)).

"Statutory construction in Puerto Rico begins with the text of the underlying statute, and ends there as well if the text is unambiguous." *In re Plaza Resort at Palmas, Inc.*, 741 F.3d 269, 274–75 (1st Cir. 2014); *see also Claro TV y Junta Regl. Tel.* v. *One Link*, 179 D.P.R. 177, — P.R. Offic. Trans. — (2010) (courts "must first examine the text of the law because it 'is the perfect expression of the legislative intent,' provided that the lawmaker used 'clear and unambiguous language'"). After all, the Puerto Rico Civil Code provides that "[w]hen a law is clear and free from all ambiguity, the letter of the same shall not be disregarded, under the pretext of fulfilling the spirit thereof." P.R. Laws Ann. tit. 31, § 14. When the plain language of a statute does not settle the interpretive query at issue, or when seeking additional indicia of the Legislature's intent, "it is . . . helpful to seek out and examine the legislative history of the bill, which includes the reports submitted by the Senate and House committees, as well as the Journal of Proceedings" and the statement of motives. *See One Link*, 2010 WL 2553881. And—to give effect to their "purpose"— "[l]aws must be construed and applied in keeping with the social aims that inspired them, without divorcing them from reality and the human issues they intend to solve." *See id.*

## I.      Plain Language—Hospital San Antonio

The Hospital asserts that Article 41.050 "expressly provides" a statutory cap on any money damages that may be obtained from the Hospital San Antonio in medical

malpractice suits. Docket No. 56 at 2. To assess whether that is so, it is imperative to recall

"Justice Frankfurter's three-part test: '(1) Read the statute; (2) read the statute; (3) read the

statute!'" *Daker* v. *Comm'r Ga. Dep't of Corr.*, 820 F.3d 1278, 1283 (11th Cir. 2016)

(quoting *Dobbs* v. *Costle*, 559 F.2d 946, 948 n.5 (5th Cir. 1977) (quoting Henry J. Friendly,

*Mr. Justice Frankfurter and the Reading of Statutes*, in Benchmarks 196, 202 (1967))). The

Hospital homes in on Paragraph Three of Article 41.050 ("Paragraph Three"). *See* P.R.

Laws Ann. tit. 26, § 4105 ¶ 3. Paragraph Three provides the following:

> No health professional (employee or contractor) may be included as a
> defendant in a civil action in a claim for damages for guilt or negligence for
> professional malpractice ("malpractice") caused in the performance of his
> profession, while said professional acts in compliance with his duties and
> functions, including teaching, as employee of the Commonwealth of Puerto
> Rico, its dependencies, instrumentalities, the comprehensive Cancer Center
> of the University Puerto Rico and the municipalities. Neither may any
> health professional whatsoever be included, either employee or contractor
> for the performance of their profession in the compliance of their duties and
> functions, including teaching, in the neonatal and pediatric intensive care
> units, operating rooms, emergency and trauma wards of the San Antonio
> Hospital of Mayaguez, at the Medical Center of Mayaguez-Ramon
> Emeterio Betances Hospital-, its trauma center and its dependencies nor the
> health professionals rendering services to patients referred by the State
> Insurance Fund Corporation. The same limits shall apply to students and
> residents who use the operating room emergency and trauma wards of the
> neonatal and pediatric intensive care facilities of the San Antonio Hospital
> and the Mayaguez Medical Center-Ramon Emeterio Betances Hospital, as
> teaching and university research workshop. In these cases, the intensive care
> physicians and pediatricians of the intent [sic] neonatal intensive care units
> and the gynecologist obstetrics and surgeons of the San Antonio Hospital,
> Mayaguez Medical Center-Ramon Emeterio Betances Hospital and the
> Trauma Center shall be subject in correspondance [sic] to the limits of
> liability that Act No. 104 of June 29, 1995, as amended, establishes for the
> State in similar circumstances.

P.R. Laws Ann. tit. 26, § 4105 ¶ 3, *certified translation available at* D.P.R. Civil Case No.

14-1516 (SCC), Docket No. 198-7 at 4–5 (emphasis removed); *see also* Docket No. 60-2.

Under the statute, a "health services professional" includes "every person" who, duly

authorized by the relevant Puerto Rico statute, "practices the profession of physician,

osteopath, dentist or podiatrist." *See* P.R. Laws Ann. tit. 26, § 4102(6).

When deconstructed, the plain meaning of Paragraph Three's text is as follows. Paragraph Three's first sentence grants immunity from suit to health services professionals carrying out the performance of their duties for the "Commonwealth of Puerto Rico, its dependencies, [and its] instrumentalities"; "the Comprehensive Cancer Center of the University Puerto Rico"; and "the municipalities." *See* P.R. Laws Ann. tit. 26, § 4105 ¶ 3. Indeed, the Puerto Rico Supreme Court arrived at this conclusion after construing similar text in prior versions of Article 41.050. *See Rodriguez Ruiz* v. *Hosp. San Jorge*, 169 D.P.R. 850, 861–62 (2007); *see also Lind Rodriguez* v. *E.L.A.*, 12 P.R. Offic. Trans. 85, 89 (1982) ("We are not dealing here with a personal defense of the physician from claims against him, but with the inexistence of a cause of action"); *Flores Roman* v. *Ramos Gonzalez*, 127 D.P.R. 601, 606 (1990). And this, too, was the First Circuit's reading of the text in a prior version of Article 41.050. *See Frances-Colon* v. *Ramirez*, 107 F.3d 62, 64 (1st Cir. 1997).

Like Paragraph Three's first sentence, Paragraph Three's second sentence grants immunity from suit to the "health professional[s]" who perform their duties "in the neonatal and pediatric intensive care units, operating rooms, emergency rooms and trauma wards of the San Antonio Hospital of Mayagüez, at the Mayagüez Medical Center- Ramón Emeterio Betances Hospital-, its Trauma Center and its dependencies." P.R. Laws Ann. tit. 26, § 4105 ¶ 3. Paragraph Three's second sentence also grants immunity from suit to the health professionals who render services to "patients referred by the Corporation of the State Insurance Fund." *See id.* Paragraph Three's third sentence mandates that these "same limits" apply to students and residents who—for "teaching and university research workshop" purposes—use the operating rooms, emergency rooms, trauma wards, and facilities of the neonatal and pediatric intensive care units of the San Antonio Hospital and the Mayagüez Medical Center-Ramón Emeterio Betances Hospital. *See id.*

The final sentence of Paragraph Three mandates that, in "these cases," certain doctors "shall be subject" to liability—and thus open to suit—within the limits that Law 104, P.R. Laws Ann. tit. 32, § 3077, establishes for Puerto Rico in "similar circumstances."

*Id.*; *see also Porto Rico Railway, Light & Power Co.* v. *Mor*, 253 U.S. 345, 348 (1920) ("When several words are followed by a clause which is applicable as much to the first and other words as to the last, the natural construction of the language demands that the clause be read as applicable to all"). The subset of health services professionals specifically identified in the statute includes "the intensive care physicians and pediatricians of the intent [sic] neonatal intensive care units and the gynecologist obstetrics and surgeons of the San Antonio Hospital, Mayaguez Medical Center-Ramon Emeterio Betances Hospital and the Trauma Center." P.R. Laws Ann. tit. 26, § 4105 ¶ 3; *see also Mor*, 253 U.S. at 348.

Law 104—which is referenced in the final sentence of Paragraph Three— authorizes suit against "the Commonwealth of Puerto Rico" up to "the sum of . . . $75,000" in "alleged actions of medical and hospital malpractice of the healthcare professionals working in the areas of obstetrics, orthopedics, general surgery or trauma exclusively at public health institutions of the Commonwealth of Puerto Rico, its agencies, instrumentalities and/r [sic] municipalities, regardless of whether said institutions are being administered or operated by a private entity." P.R. Laws Ann. tit. 32, § 3077. And when the alleged malpractice causes damage "to more than one person or when there are several causes of action to which a single injured party is entitled, the compensation for all damages caused by said action or omission may not exceed the sum of . . . $150,000." *Id.*

Deconstructing the statutory text of Paragraph Three reveals that nothing in the plain language grants the Hospital a statutory cap on damages in medical malpractice suits. This is because sentence two of Paragraph Three grants immunity to the *health professionals* of the Hospital San Antonio under certain circumstances, while the final sentence of Paragraph Three similarly focuses on—and applies to—a subset of health professionals at the Hospital San Antonio, namely, "the intensive care physicians and pediatricians of the intent [sic] neonatal intensive care units and the gynecologist obstetrics and surgeons." *See* P.R. Laws Ann. tit. 26, § 4105 ¶ 3. To arrive at the result the Hospital seeks, one would have to excise the following statutory language from the last sentence of

Paragraph Three: "the intensive care physicians and pediatricians of the intent [sic] neonatal intensive care units and the gynecologist obstetrics and surgeons." *See id.* But doing so would violate a cardinal rule of statutory construction—as it is a court's duty "to give effect, if possible, to every clause and word of a statute." *See Inhabitants of Montclair Tp.* v. *Ramsdell*, 107 U.S. 147, 152 (1883); *A.R.P.E.* v. *Ozores Perez*, 16 P.R. Offic. Trans. 1005, 1011 (1986) ("Whenever possible, the different sections of a statute should generally be read giving effect to each one of its clauses.").

Another fundamental rule of statutory construction requires that a statute be "read and considered as a whole" rather than "fractionally." *Ramon Delgado Rodriguez* v. *Departamento de Servicios Contra La Adiccion*, 14 P.R. Offic. Trans. 228, 235 (1983). In this vein, while the Hospital zeroes in on Paragraph Three, the final paragraph of Article 41.050 provides that the statutory caps of Law 104, P.R. Laws Ann. tit. 32, § 3077, apply to nine specific circumstances. *See* P.R. Laws Ann. tit. 26, § 4105 ¶¶ 8(1)–(9). Notably, each of the subsections included in the last paragraph of Article 41.050 identifies a health care institution, and the Hospital San Antonio did not make the list. That the Puerto Rico Legislature could have included the Hospital San Antonio in the last paragraph of Article 41.050—but ultimately did not—is problematic to, and weighs against, the Hospital's theory. *See Ferreteria Matos, Inc.* v. *P.R. Tel. Co.*, 10 P.R. Offic. Trans. 194, 198–99 (1980) ("With regard to the five thousand dollar limit, set down by the Regulations for all claims, we find no authorization to that effect in the cited law. In fact, the clear provision of art. 10 mentioned above convinces us that the lawmaker did not have the intention of imposing, and much less authorizing, said limit. If he had wanted to do so, the lawmaker would have expressed it without circumlocutions."). In sum, nothing in Article 41.050's text expressly grants the Hospital San Antonio a statutory cap on damages.

## II.    Legislative History—Hospital San Antonio

At this juncture, the Hospital faces a steep uphill climb—because, generally, "[w]hen the law is clear, its letter should not be undervalued under pretext of fulfilling the

spirit thereof." *Rodriguez v. Fid. Bond Mortg. Corp.*, 8 P.R. Offic. Trans. 161, 162 (1978); P.R. Laws Ann. tit. 31, § 14. Yet, in seeking to show that Article 41.050 establishes a statutory cap on damages for the Hospital San Antonio, the Hospital underscores the legislative history of laws amending Article 41.050. Courts have recognized that the "plain meaning of legislation" is not necessarily conclusive "in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.'" *United States* v. *Ron Pair Enterprises, Inc.*, 489 U.S. 235, 242 (1989) (quoting *Griffin* v. *Oceanic Contractors, Inc.*, 458 U.S. 564, 571 (1982)). "In such cases, the intention of the drafters, rather than the strict language, controls." *Ron Pair Enterprises*, 489 U.S. at 242; *see also Clinica Julia* v. *Secretary of the Treasury*, 76 P.R.R. 476, 486 (1954) ("the literal interpretation [of a statute] may be ignored by the courts only if it is *clearly contrary* to the real intent or legislative purpose, as such purpose or intent may arise from the statute as a whole or from the entire section in question") (emphasis added).

Here, the text of Article 41.050—when read as a whole—does not emphatically evince a legislative intent to provide the Hospital San Antonio with a statutory cap on damages in medical malpractice suits. And a review of the relevant legislative history does not pellucidly indicate that the plain meaning of Article 41.050's text "is clearly contrary to the real intent or legislative purpose." *See Clinica Julia*, 76 P.R.R. at 486. The relevant legislative history begins with the enactment of Law 278 of September 2012 ("Law 278"). Act No. 278-2012, S.B. 2344 (Conference), 16th Legis. (P.R. 2012), *available at* http://www.oslpr.org/v2/leyesPuertoRico.aspx. After Law 278 amended Article 41.050, the statute was further amended by Law 101 of August 2013 ("Law 101"). Act No. 101-2013, H.B. 193, 17th Legis. (P.R. 2013). And Law 150 of December 2013 ("Law 150") made the latest amendment to Article 41.050. Act No. 150-2013, S.B. 811, 17th Legis. (P.R. 2013).

Before forging ahead through this historical journey, it is helpful to recall the statutory text of Paragraph Three as it existed prior to the enactment of Law 278:

> No healthcare professional (employee or contractor) may be included as defendant in a civil action for damages because of culpability or negligence arising from malpractice committed in the practice of his/her profession while said healthcare professional acts in compliance with his/her duties and functions, including teaching duties, in the Mayagüez Medical Center—Dr. Ramón Emeterio Betances Hospital—its Trauma Center and its dependencies, to health professionals rendering such services to patients referred by the State Insurance Fund Corporation (SIFC), as well as those Trauma and Stabilization Centers so designated under Act No. 544 of September 30, 2010. The same limits shall apply to students and residents using the facilities of the Mayagüez Medical Center as university level learning and research venues. In these cases, Mayagüez Medical Center—Dr. Ramón Emeterio Betances Hospital—and the corresponding Trauma Center shall be subject to the responsibility limits set forth by Act No. 104 of June 29, 1955, as amended, for the Commonwealth under similar circumstances.

*See* Act. No. 104-2011, H.B. 2534, 16th Legis. (P.R. 2011). Notably, sentences one and two of this prior version of Paragraph Three established immunity from suit to certain health professionals, while the final sentence essentially established that the Mayagüez Medical Center—Dr. Ramón Emeterio Betances Hospital—and the corresponding Trauma Center were subject to the liability limits that Law 104, P.R. Laws Ann. tit. 32, § 3077, establishes for the Commonwealth of Puerto Rico in similar circumstances.

Law 278 began as Senate Bill 2344, which Senators Rivera Schatz and Vázquez Nieves presented to the Puerto Rico Senate in October 2011. *See Oficina de Servicios Legislativos*, Interrogación de Medidas: P S2344, "Radicado." The initial version of the bill's preamble provided that the proposed law sought to include the Hospital San Antonio of Mayagüez within the limits of civil liability applicable to the Commonwealth of Puerto Rico in medical malpractice cases. *See id.* at 1 ¶ 1. This version of the bill added the Hospital San Antonio to the list of hospitals included in the first sentence of the then-existing version of Paragraph Three. *See id.* at 3. And this version of the bill would also change the final sentence of Paragraph Three to read as follows: in these cases, the Hospital San Antonio, Centro Médico de Mayagüez—Hospital Ramón Emeterio Betances—and the corresponding Trauma Center shall be subject to the limits that Law 104 establishes for the

Commonwealth of Puerto Rico in similar circumstances. *See id.* at 4. Notably, this version of Senate Bill 2344 would have unambiguously made the Hospital San Antonio, like the Mayaguez Medical Center, subject to the liability limits that Law 104 establishes for Puerto Rico under similar circumstances.

And the statement of motives included with the initial version of Senate Bill 2344 aligned with the proposed change to Article 41.050's statutory text—stating as follows:

> The San Antonio Hospital is a tertiary hospital institution that offers specialized healthcare services, namely pediatrics, obstetrics, and gynecological services. For over twelve (12) years, the San Antonio Hospital has been the only institution in the western area of the Island that maintains neonatal and pediatric intensive care units or NICU and PICU, respectively. Like the Mayagüez Medical Center (also known as the Dr. Hospital Ramón Emeterio-Betances), the San Antonio Hospital is owned by the Municipality of Mayagüez. The San Antonio Hospital provides healthcare services to mothers and children of all the northwestern, mid and western regions of the Island. It is worth noting that over eighty percent (80%) of patients seeking healthcare services at the San Antonio Hospital are Health Reform beneficiaries.

> As stated by the Municipality of Mayagüez in Municipal Ordinance No. 53, Series 2010-2011, both the Mayagüez Medical Center and the San Antonio Hospital are an essential part of the municipal healthcare system. Hence, the Municipality has established a structure for the orderly operation of such institutions in the best interest of the Municipality and the wellbeing of the residents thereof.

> Act No. 103 was approved on June 27, 2011, to amend Section 41.50 [sic] of the "Insurance Code of Puerto Rico." Said statute included the Mayagüez Medical Center, Dr. Ramón Emeterio Betances Hospital, within the limits of civil liability for medical malpractice set for the Commonwealth of Puerto Rico. The San Antonio Hospital was not included in said amendment despite the significant participation of said institution in the healthcare system not only in Mayagüez, but also in the western, northwestern, and mid regions of Puerto Rico. Failing to include the San Antonio Hospital within the limits of civil liability for medical malpractice that cover the Mayagüez Medical Center could disrupt the healthcare system of the Municipality of Mayagüez, which is the owner of both institutions which at present have different civil liability coverage. For all of the foregoing, this Legislative Assembly deems it necessary to include the San Antonio Hospital in Mayagüez within the limits of civil liability for medical malpractice set for the Commonwealth of Puerto Rico.

*See id.* In January 2012, the Puerto Rico Senate approved this initial version of Senate Bill 2344 without amendments. *See Oficina de Servicios Legislativos*, Interrogación de Medidas: P S2344, "Aprobado por el Senado en Votación Final, 22-05-00-01."

After the Senate approved the bill, it was sent to the Puerto Rico House of Representatives in January 2012. *See id.*, "Texto de Aprobación Final enviado a la Cámara." On May 10, 2012, the House of Representatives amended the initial version of Senate Bill 2344, and approved the version of the bill with these amendments. *See id.*, "Aprobado con enmiendas en sala." These amendments, among other things, included new statutory language that effectively changed the focus of the bill from the Hospital San Antonio itself to the physicians of that hospital. *See* P.R. House of Representatives *Diario de Sesiones* for May 10, 2012, at 131. When the bill returned to the Puerto Rico Senate, the Senate did not concur with the amendments. *See Oficina de Servicios Legislativos*, Interrogación de Medidas: P S2344, "Cuerpo de Origen no concurre con enmiendas." Accordingly, the Senate requested a conference committee with members of the House of Representatives to address the discrepancy in the versions of Senate Bill 2344 approved in each body of the Puerto Rico Legislature. *See id.* This conference committee was convened, and the version of Senate Bill 2344 put forward by the House of Representatives emerged victorious. *See* P.R. Senate *Diario de Sesiones* for June 24, 2012, at 49,497–49,500. Importantly, it was this version of Senate Bill 2344 that was sent to—and approved by—the Governor of Puerto Rico. *See Oficina de Servicios Legislativos*, Interrogación de Medidas: P S2344, "Se dispone que sea enrolado"; "Enviado al Gobernador."

After Law 278 was enacted, Paragraph Three read as follows:

> No healthcare professional (employee or contractor) may be included as defendant in a civil action for damages because of culpability or negligence arising from malpractice committed in the practice of his/her profession while said healthcare professional acts in compliance with his/her duties and functions, including teaching duties; in the neonatal or pediatric intensive care units, operating or emergency rooms, and trauma centers of the San Antonio Hospital in Mayagüez, the Mayagüez Medical Center—Dr. Ramón Emeterio-Betances Hospital—its Trauma Center and its offices; to health

professionals rendering such services to patients referred by the State Insurance Fund Corporation (SIFC), as well as those Trauma and Stabilization Centers designated as such under Act No. 544-2004. The same limits shall apply to students and residents using the neonatal or pediatric intensive care units, operating or emergency rooms, and trauma centers of the San Antonio Hospital in Mayagüez and the Mayagüez Medical Center—Dr. Ramón Emeterio-Betances Hospital—as a teaching and university research facility. In these cases, the pediatric and neonatal intensive care specialists and pediatricians, as well as the obstetricians/gynecologists and surgeons of the San Antonio Hospital, the Mayagüez Medical Center—Dr. Ramón Emeterio-Betances Hospital—and the corresponding Trauma Center shall be subject to the liability limits set forth in Act No. 104 of June 29, 1955, as amended, for the Commonwealth under similar circumstances.

Act No. Act No. 278-2012, *certified translation*, *supra*, at 3–4.

The legislative history detailed above sheds light on the reason why the preamble to Law 278 states that the law, among "other purposes," aimed "to include [the] *pediatric and neonatal intensive care specialists and pediatricians, as well as the obstetricians/gynecologists and surgeons* of the San Antonio Hospital in Mayagüez within the limits of civil liability for medical malpractice to which the Government of Puerto Rico is subject." *Id.* at 1 (emphasis added). And this legislative history also explains why the last sentence of the current version of Paragraph Three provides that, "[i]n these cases, *the pediatric and neonatal intensive care specialists and pediatricians, as well as the obstetricians/gynecologists and surgeons* of the San Antonio Hospital, the Mayagüez Medical Center—Dr. Ramón Emeterio-Betances Hospital—and the corresponding Trauma Center shall be subject to the liability limits set forth in Act No. 104 of June 29, 1955, as amended, for the Commonwealth under similar circumstances." *Id.* at 4 (emphasis added).

While the legislative history of Law 278 sheds light on some portions of the current version of Paragraph Three's statutory language, this history is—at best—ambiguous, and thus it does not emphatically demonstrate that the clear purpose and intent of Law 278 was to entitle the Hospital San Antonio—rather than a subset of doctors in that hospital—to the statutory caps applicable to the Commonwealth of Puerto Rico under similar circumstances. To be sure, the Hospital repeatedly underscores the last sentence of Law

278's statement of motives in attempting to show that the Puerto Rico Legislature's intent is clear. And it is true that this sentence undeniably supports the Hospital's theory. But the initial version of Senate Bill 2344—as introduced by Senators Rivera Schatz and Vázquez Nieves—would have unambiguously entitled the Hospital San Antonio to a statutory cap on damages in medical malpractice actions. Yet, this was not the version of the bill that carried the day after Senate Bill 2344 was submitted to a conference committee comprised of representatives from both bodies of the Puerto Rico Legislature. Rather, the version of the bill that proved victorious effectively changed the focus of the bill from the Hospital San Antonio to a subset of health professionals within that health care institution.

And that the statement of motives remained the same despite the amendments to the language of Senate Bill 2344 arguably cuts in favor of either party. On the one hand, legislators who may have supported the Hospital's theory could have acquiesced to approving the amended version of Senate Bill 2344 out of a belief that the statement of motives would evince their intent. And, on the other hand, legislators who supported Oquendo's position could have acquiesced to approving Law 278 despite the language in the statement of motives out of a belief that the operative language of the statute and the preamble to Law 278 would evince their intent. Thus, the legislative history surrounding Law 278 does *not* emphatically support the proposition that—notwithstanding the text of Article 41.050—the Puerto Rico Legislature clearly intended to allow the Hospital San Antonio to benefit from a statutory cap on money damages in malpractice suits. *See Clinica Julia*, 76 P.R.R. at 486 ("the literal interpretation [of a statute] may be ignored by the courts only if it is clearly contrary to the real intent or legislative purpose, as such purpose or intent may arise from the statute as a whole or from the entire section in question").

Law 101 amended Article 41.050 in 2013. Act No. 101-2013, H.B. 193, 17th Legis. (P.R. 2013), *available at* http://www.oslpr.org/2013-2016/leyes/pdf/ley-101-13-Ago-2013.pdf. But this amendment did not alter the operative language of Article 41.050's Paragraph Three in any way that is meaningful to the dispute at issue in this case. *See id.*

And neither Law 101's preamble nor its statement of motives mentions the Hospital San Antonio. *See id.* Indeed, the Hospital does not suggest that Law 101 made any change to Article 41.050 that would entitle the Hospital San Antonio to the relief sought. Thus, Law 101 does not shed light on whether the Hospital is entitled to a statutory cap on damages.

The Hospital does contend, on the other hand, that Law 150 sheds light on the issue before the court. But Law 150 was enacted to re-incorporate "the immunity to health professionals who are employees or contractors of the Commonwealth of Puerto Rico, its dependencies, [and its] instrumentalities, of the Comprehensive Cancer Center of the University Puerto Rico, and [of] the municipalities," as well as "to establish the application of this Act retroactively." Preamble to Act No. 150-2013, S.B. 811, 17th Legis. (P.R. 2013), *certified translation available* at Docket No. 60-2. The statement of motives for Law 150 explains that the immunity granted to these particular health professionals was "left out" from Article 41.050 due to "an inadvertent or technical error" that occurred when the Puerto Rico Legislature passed Law 103 of 2011. *See id.* The Puerto Rico Legislature noted "that the only purpose of both bills" that led to the enactment of Laws 103 and 104 of 2011 "was to extend the protection of [Article 41.050] to medical-hospital service providers that were not previously protected by said statute." *See id.*

Law 150's statement of motives noted that Article 41.050 "had been amended two times after the approval of Act No. 103" of 2011—i.e., by Law 101 of 2013 and Law 278 of 2012—and that "the technical error ha[d] gone unnoticed until" Law 150 was introduced to correct the error. *See id.* Notably, neither the Hospital San Antonio nor Law 278 are expressly mentioned in Law 150. *See id.* Yet, because Law 150 amended the operative text of Paragraph Three, this law furnished the current text of the statute. Indeed, Law 150's retroactivity provision states that "[t]his Act shall start to govern immediately after its approval, and shall have retroactive effect over any cause of action in any legal proceeding that has been constituted or filed before any competent court or adjudicative forum since June 27, 2011 on forward and that has not been adjudicated or settled, in a final and binding

manner, by a court or competent forum, or over any fact occurred on or after June 27, 2011 over which no final and binding judgment has been issued." *See id.* Thus, the relevant legislative history does not clearly support the Hospital's theory, particularly since the Legislature apparently haggled over—but ultimately did not adopt—the statutory text that would have unambiguously granted the Hospital the precise relief sought from this court.

## III.    Case Law Interpreting Article 41.050—Hospital San Antonio

Having canvassed the text of Paragraph Three and the relevant legislative history to Article 41.050, it is necessary to address recent case law interpreting the statute. In *Galo Ponce de Leon* v. *Hospital San Antonio, Inc.* ("*Galo*"), a Puerto Rico trial court held that the "San Antonio Hospital is entitled to the immunity and the limits of liability up to the amount" established by Law 104. *Galo Ponce de Leon* v. *Hospital San Antonio, Inc.*, No. ISCI2015002255 (P.R. Trial Ct. June 24, 2016), *certified translation available* at Docket No. 57-12 at 7. To arrive at this conclusion, the *Galo* court cited Law 278's statement of motives; the text of Paragraph Three; and the language of Law 104, P.R. Laws Ann. tit. 32, § 3077. *See Galo*, at 5–7. But, as illustrated above, nothing in the plain language of Article 41.050 actually entitles the Hospital San Antonio to a statutory cap on damages. *See supra* Pt. I. And while Law 278's statement of motives undeniably supports the Hospital's theory, the statement of motives is but a part of a much richer—and much more ambiguous— legislative history. *See supra* Pt. II. Finally, the plain language of Law 104, P.R. Laws Ann. tit. 32, § 3077, does not entitle the Hospital to a statutory cap on damages. This statutory provision applies when the Commonwealth of Puerto Rico—or, say, one of the municipalities in the Commonwealth—is sued for medical malpractice, and the protection to these entities is maintained even if the institution where the malpractice occurred is "being administered or operated by a private entity."[2] *See* P.R. Laws Ann. tit. 32, § 3077.

---

[2] The Municipality of Mayaguez is not a defendant here, and thus the plain language of Law 104, P.R. Laws Ann. tit. 32, § 3077, provides no grounds for granting the Hospital a statutory cap on damages. After all, if any law would have given a statutory cap on damages to the Hospital,

The Hospital further relies on *Kenyon* v. *Hospital San Antonio, Inc.*, a case which also held that the Hospital San Antonio "is immune for damages in excess of" the limits established by Law 104. *Kenyon* v. *Hospital San Antonio, Inc.*, Civil Case No. 14-1516, Docket No. 243 at 25 (D.P.R. 2017). To arrive at this conclusion, the *Kenyon* court cited *Galo*, and, like the *Galo* court, cited Law 278's statement of motives and Law 104 to buttress the court's holding. *Kenyon*, Docket No. 243 at 22–25. Notably, however, the *Kenyon* court did not identify the specific text of Article 41.050 that entitles the Hospital to a statutory cap on damages in medical malpractice actions. *See id.*

The *Kenyon* court also discussed the legislative history corresponding to Law 278 and Law 150. *See id* at 15–16. According to the *Kenyon* court, Law 203 of 2011 "amended Article 41.050 to extend its protection to several medical providers," and a "mistake" deprived "several entities" of previously-conferred relief under the statute. *See id.* After relaying that this "mistake went unnoticed," the *Kenyon* court states that Law 278 "was passed" to "extend[] immunity under Article 41.050 to [the Hospital San Antonio] and the physicians who work in its facilities." *See id.* at 16. And the *Kenyon* court adds that "[i]t wasn't until 2013 that the Legislature passed Law No. 150 of December 2013, which recognized the unintended error made back in 2011 and amended Article 41.050 to restore protection to those entities that had been left out." *See id.* at 13. Following this reading of the relevant legislative history, the *Kenyon* court concluded that "by virtue of Law 150-2013, Article 41.050 applies to" the Hospital San Antonio. *See id.* at 16; *see also id.* at 17 ("We think the text of Law 150-2013 leaves no room for interpretation. It specifically covers [the Hospital San Antonio] and its physicians under the immunity . . . .").

But the *Kenyon* court's suggestion that Law 150 granted the Hospital San Antonio a statutory cap on damages is unpersuasive. As an initial matter, the Hospital San Antonio

---

it would have been Law 278. The initial version of Senate Bill 2344 makes this particular point clear. *See supra* Pt. II. But, as has been explained, the changes Law 278 ultimately made to the text of Article 41.050 do not actually entitle the Hospital to the relief it seeks. *See supra* Pt. I.

was not one of the entities that was covered by Article 41.050 in 2011. After all, if any law was meant to grant that relief, it was Law 278 of 2012. *See supra* Note 2. For this reason, the Hospital San Antonio could not have been one of the entities that was "left out" because of the technical or inadvertent error that indeed occurred when Law 103 of 2011 was enacted.[3] *See id.* at 13. What is more, when the Puerto Rico Legislature enacted Law 150, it specifically stated that Law 150 aimed to re-incorporate into the statute the "health professionals who are employees or contractors of the Commonwealth of Puerto Rico, its dependencies, [and its] instrumentalities, of the Comprehensive Cancer Center of the University Puerto Rico, and [of] the municipalities." Act No. 150-2013, S.B. 811, 17th Legis. (P.R. 2013), *certified translation available* at Docket No. 60-2. The Hospital San Antonio did not make the list of entities expressly included in Law 150, and one will fruitlessly search within Law 150—including within the statement of motives—for any mention of the Hospital San Antonio. *See id.*

Finding unpersuasive the reasoning employed in *Galo* and *Kenyon*, I respectfully decline to follow the holdings of these cases. And after considering the plain language of Paragraph Three, reviewing all of the text in Article 41.050, unearthing the legislative history to Law 278 and the two laws that subsequently amended Article 41.050, searching for the purpose of Law 278, and carefully analyzing the case law interpreting Article 41.050, I find that the Hospital San Antonio is not entitled to a statutory cap on damages in medical malpractice actions. Thus, the Hospital's motion is **DENIED**.

## IV.     Plain Language & Legislative History—Dr. Quiles

Dr. Quiles, a surgeon specializing in obstetrics-gynecology who has privileges to admit patients to the Hospital San Antonio and who treated Oquendo at that Hospital in

---

[3] To be sure, the Hospital submitted to the *Kenyon* court and this court a 14-page Senate Report regarding Senate Bill 811, which became Law 150. Docket No. 106-2 at 1–14. But while the final page of this report indeed mentions the Hospital San Antonio, Law 150—as enacted—did actually not do so. And, to the extent any doubt remains about the precise error that occurred when Law 103 was enacted, the ninth page of this report specifically identifies this error—which has been explained above and which has nothing to do with the Hospital San Antonio. *See id.* at 9.

July 2013, contends that Paragraph Three entitles him to absolute immunity from suit in this case. Two sentences in the current version of Paragraph Three, which are underscored in the text below, are relevant to assessing Dr. Quiles's entitlement to relief:

> No health professional (employee or contractor) may be included as a defendant in a civil action in a claim for damages for guilt or negligence for professional malpractice ("malpractice") caused in the performance of his profession, while said professional acts in compliance with his duties and functions, including teaching, as employee of the Commonwealth of Puerto Rico, its dependencies, instrumentalities, the comprehensive Cancer Center of the University Puerto Rico and the municipalities. <u>Neither may any health professional whatsoever be included, either employee or contractor for the performance of their profession in the compliance of their duties and functions, including teaching, in the neonatal and pediatric intensive care units, operating rooms, emergency and trauma wards of the San Antonio Hospital of Mayaguez, at the Medical Center of Mayaguez-Ramon Emeterio Betances Hospital-, its trauma center and its dependencies nor the health professionals rendering services to patients referred by the State Insurance Fund Corporation.</u> The same limits shall apply to students and residents who use the operating room emergency and trauma wards of the neonatal and pediatric intensive care facilities of the San Antonio Hospital and the Mayaguez Medical Center-Ramon Emeterio Betances Hospital, as teaching and university research workshop. <u>In these cases, the intensive care physicians and pediatricians of the intent [sic] neonatal intensive care units and the gynecologist obstetrics and surgeons of the San Antonio Hospital, Mayaguez Medical Center-Ramon Emeterio Betances Hospital and the Trauma Center shall be subject in correspondance [sic] to the limits of liability that Act No. 104 of June 29, 1995, as amended, establishes for the State in similar circumstances.</u>

P.R. Laws Ann. tit. 26, § 4105, *certified translation available at* D.P.R. Civil Case No. 14-1516 (SCC), Docket No. 198-7 at 4–5 (different emphasis provided); Docket No. 60-2.

As previously explained, the plain language of sentence two, Paragraph Three, confers absolute immunity from suit to the "health professional[s]" who perform their duties "in the neonatal and pediatric intensive care units, operating rooms, emergency rooms and trauma wards of the San Antonio Hospital of Mayagüez . . . ." *See* P.R. Laws Ann. tit. 26, § 4105; *Lind Rodriguez*, 12 P.R. Offic. Trans. at 89; *Frances-Colon*, 107 F.3d at 64; *supra* Pt. I. But—because a statute must be "read and considered as a whole" rather than "fractionally," *Ramon Delgado Rodriguez*, 14 P.R. Offic. Trans. at 235, and because a

court must "give effect, if possible, to every clause and word of a statute," *Ramsdell*, 107 U.S. at 152—it is also necessary to consider the final sentence of Paragraph Three.

The last sentence of Paragraph Three, as was also previously explained, provides that, in "these cases," the "gynecologist obstetrics and surgeons of the San Antonio Hospital"—like Dr. Quiles—are "subject to" the liability limits set forth in Law 104, P.R. Laws Ann. tit. 32, § 3077. But, one might reasonably query at this point, how can a surgeon or physician specializing in obstetrics-gynecology who performed his or her duties in, say, an operating room of the Hospital San Antonio be simultaneously immune from suit and subject to liability within the limits established by Law 104? That is the precise quagmire of statutory interpretation raised by the circumstances of this case. And to effectuate the Puerto Rico Legislature's intent, this court must attempt to harmonize the apparent turmoil in Paragraph Three's numerous provisions. *See Pueblo de P.R.* v. *Hernandez Maldonado*, 1991 P.R.-Eng. 735,865 (1991) ("[s]tatutes should be treated as a harmonious whole, and should be read together and not construed as divorced from their provisions").

Because the text of Paragraph Three admits no plain or definitive answer to the dispute at issue, it is necessary to turn to the legislative history. But doing so, to be sure, is of limited value. Indeed, "[f]or the vast majority of ambiguous statutory provisions"—like the one at issue here—"relying on legislative history to discern legislative intent should be done with caution, *if at all.*" *Morgan* v. *Gay*, 466 F.3d 276, 278 (3d Cir. 2006) (emphasis added). Indeed, "Judge Harold Leventhal has been famously quoted as saying that citing legislative history is like 'looking over a crowd and picking out your friends.'" *Id.* (citing Patricia M. Wald, *Some Observations on the Use of Legislative History in the 1981 Supreme Court Term*, 68 Iowa L. Rev. 195, 214 (1983) (attributing the quote)).

Unfortunately, the crowd has not spoken with one voice with respect to the disputes at issue here. Indeed, on the one hand, the preamble to Law 278 specifically states that the purpose of this law was "to include [the] pediatric and neonatal intensive care specialists and pediatricians, as well as the obstetricians/gynecologists and surgeons of the San

Antonio Hospital in Mayagüez within the limits of civil liability for medical malpractice to which the Government of Puerto Rico is subject." Act No. Act No. 278-2012, *certified translation*, *supra*, at 1. This portion of the legislative history supports Oquendo's position. But, on the other hand, the legislative history also indicates that the Puerto Rico Legislature added the Hospital San Antonio to the portion of the then-existing Paragraph Three granting immunity from suit to the health professionals of certain health care institutions. *See id.* at 3–4. And Laws 101 and 150 of 2013—the two laws that amended Article 41.050 after Law 278 of 2012 did so—do not shed meaningful light on this dispute. Thus, the legislative history gives little traction to the resolution of the tension in Paragraph Three.

## V.    Case Law Interpreting Article 41.050—Dr. Quiles

At least four courts have weighed in on whether Article 41.050 grants absolute immunity from suit to the doctors of the Hospital San Antonio, and each of these courts has held that it does. *See Kenyon*, D.P.R. Civil Case No. 14-1516, Docket No. 243 at 13–19; *Munoz-Vargas* v. *Laguer*, No. CV 14- 1597 (CVR), 2016 WL 406345, at *2 (D.P.R. Feb. 2, 2016); *Nieves Vega* v. *Hosp. San Antonio,* No. ISCI201500812, 2016 WL 3391541, at *2 (P.R. Cir. May 31, 2016), *certified translation available at* Docket No. 60-3; *Toro-Troche* v. *Aviles Vazquez*, No. 1SC1201500285 (P.R. Trial Ct. June 25, 2015), *certified translation available at* D.P.R. Civil Case No. 14-1516, Docket No. 198-7. The Puerto Rico Supreme Court—which is the ultimate authority on the meaning of Puerto Rico law—has not thrown its hat in the ring for this precise issue, and I am unpersuaded by each of the decisions holding that *all* doctors working at or for the Hospital San Antonio are immune from suit in medical malpractice actions. *See, e.g.*, *Pagan Torres* v. *Negron Ramos*, 578 F.2d 11, 14 (1st Cir. 1978) ("the Supreme Court of the United States reversed a decision of this court which had reversed a ruling of the Puerto Rico Supreme Court dealing with an interpretation of local statutes").

*Toro-Troche*, for example, misread the relevant legislative history and declared that "by virtue of Law 150 . . . total immunity is provided to the surgeons who perform surgeries

at the San Antonio Hospital." *See* D.P.R. Civil Case No. 14-1516, Docket No. 198-7 at 4. But this is not what Law 150 did. *See supra* Pt. II. *Toro-Troche* also quoted the text of Article 41.050 and underscored only the second sentence of Paragraph Three to arrive at its conclusion. *See* D.P.R. Civil Case No. 14-1516, Docket No. 198-7 at 4. But, in so doing, the court effectively ignored the last sentence of Paragraph Three, as well as one of the cardinal rules of statutory interpretation. *See, e.g.*, *Herman* v. *Hector I. Nieves Transp., Inc.*, 244 F.3d 32, 36 (1st Cir. 2001) ("A primary canon of statutory construction is that a statute should be construed so as not to render any of its phrases superfluous.") (citation omitted). Likewise, the *Munoz-Vargas* court found Article 41.050's "wording . . . clear and unambiguous" only after excluding the final two sentences of Paragraph Three from the court's analysis and the court's opinion and order. *See Munoz-Vargas*, 2016 WL 3391541, at *2. Because neither *Toro-Troche* nor *Munoz-Vargas* meaningfully grappled with the ambiguity and tension created by the final sentence of Paragraph Three, I respectfully decline to follow the approach or conclusion of either of these two cases.

 *Nieves-Vega*, a decision rendered by the Puerto Rico Court of Appeals, actually addressed the tension in Paragraph Three. Docket No. 60-3. In that case, the plaintiff argued that a doctor at the Hospital San Antonio was subject to suit up to the limits established by Law 104. *Id.* at 9–10. After quoting the text of Paragraph Three, the *Nieves-Vega* court held that Article 41.050 "provides immunity" for doctors who are sued for medical malpractice arising from their work at the Hospital San Antonio. *Id.* at 10. Notwithstanding this holding, *Nieves-Vega* "[f]urther" reasoned that—"as a matter of incentive"—Article 41.050 "subjects the liability of said health professionals to the same limits applicable to the State." *Id.* Continuing down this perilous line of reasoning, the *Nieves-Vega* court added, "That does not mean that the health professional is deprived of coverage in such portion of a claim exceeding set limits." *Id.* Yet, despite this alternative reading of Article 41.050, the Puerto Rico Court of Appeals ultimately held that the trial court correctly dismissed the suit against the doctor "because of the inexistence of a cause of action against him." *Id.*

But the reasoning of *Nieves-Vega* finds no support in logic or Puerto Rico Supreme Court precedent. *See Rodriguez-Figueroa* v. *Centro de Salud Mario Canales Torresola*, No. CC-2014-1081, 2017 WL 1449706, * 4, 7 (P.R. Apr. 12, 2017), *certified translation available at* Docket No. 106-1. As a matter of practical logic, one would likely be hard-pressed to fathom that a doctor at the Hospital San Antonio would find an "incentive" to being subjected to liability by the final sentence of Paragraph Three when an earlier part of Paragraph Three arguably entitles him or her to immunity from suit. And, more significantly, *Nieves-Vega*'s reasoning actually conflicts with Puerto Rico Supreme Court precedent. *See Rodriguez-Figueroa*, 2017 WL 1449706, * 4, 7. This is because when a doctor is entitled to immunity from suit, a cause of action cannot be brought against that doctor. *See, e.g.*, *Lind Rodriguez*, 12 P.R. Offic. Trans. at 89 ("We are not dealing here with a personal defense of the physician from claims against him, but with the inexistence of a cause of action"). Accordingly, a doctor who is immune from suit cannot also be subject to liability within the limits that Law 104 sets—because a plaintiff would not be permitted to bring or maintain a civil action against such a defendant in the first place. *See id.*

The Puerto Rico Supreme Court recently explained as much. *See Rodriguez-Figueroa*, 2017 WL 1449706, * 4, 7. *Rodriguez-Figueroa* explicated that the concept of limited liability found in Law 104, P.R. Laws Ann. tit. 32, § 3077, and the concept of immunity from suit in Paragraph Three are mutually exclusive—such that the application of one concept necessarily excludes application of the other. *See Rodriguez-Figueroa*, 2017 WL 1449706, * 4. And, for this precise reason, the Puerto Rico Supreme Court has explicitly held that it is improper to find that the Puerto Rico Legislature could have intended both concepts to apply simultaneously to a particular defendant. *See id.* at 7. Yet, *Nieves-Vega* erroneously read Article 41.050 to do just that in medical malpractice cases involving physicians of the Hospital San Antonio. And *Kenyon* essentially followed the reasoning of *Toro-Troche*, *Munoz-Vargas*, and *Nieves-Vega*. *See Kenyon*, Docket No. 243 at 18. Thus, I respectfully decline to follow the approach of these cases.

To be sure, I do not lightly part ways with these courts' decisions. But this court is not alone in finding issues with the statutory text of Article 41.050. Indeed, Puerto Rico Supreme Court Associate Justice Pabón Charneco recently wrote separately in a concurring opinion to express that the numerous amendments to Article 41.050 have made it necessary for the Puerto Rico Legislature to re-examine the statute's content in a comprehensive, rather than fragmented, fashion. *See Rodriguez-Figueroa*, 2017 WL 1449706, * 8. This, Associate Justice Pabón Charneco explained, would express clearly and unequivocally Puerto Rico's policy choices with respect to issues of immunity and limited responsibility. *See id.* I echo that call—as Paragraph Three's text is not entirely clear as to whether a doctor working for or at the Hospital San Antonio, like Dr. Quiles, is completely immune from suit or subject to suit within the limits set by Law 104.

In the meantime, however, this court may—and is likely obligated to—proceed to discerning the meaning of Paragraph Three. *See DeMoss* v. *Kelly Servs., Inc.*, 493 F.2d 1012, 1015 (1st Cir. 1974) ("So long as a case does not present constitutional issues which conceivably might be avoided by a construction of the Supreme Court of Puerto Rico, the federal court is obliged to proceed to the merits of" an issue of statutory construction, even a novel or thorny one). While it is a close call, I find that Dr. Quiles is not immune from suit in this case; instead, I find that Dr. Quiles is subject to suit within the limits that Law 104 sets for the Commonwealth of Puerto Rico under similar circumstances. This court arrives at this admittedly difficult-to-make conclusion for two reasons.

As an initial matter, while the legislative history to Article 41.050 is surely not a model of clarity, the preamble to Law 278 does specifically relay that the purpose of this legislation was to subject the Hospital's surgeons and the Hospital's doctors specializing in obstetrics-gynecology to the limits applicable to Puerto Rico under similar circumstances. Act No. Act No. 278-2012, *certified translation*, supra, at 1. Accordingly, granting complete immunity to a doctor of the Hospital San Antonio contravenes the intent that the Puerto Rico Legislature expressed in the preamble to Law 278. And though it is

true that the legislative history to Law 278 also indicates that this legislation made changes to the portion of the then-existing version of Paragraph Three relating to the immunity of certain health services professionals, nothing in Law 278's statement of motives or Law 278's preamble *expressly* states that this was indeed Law 278's clear purpose. *See id.* at 1–3. One can contrast this with the concept of limited liability—which made an early appearance at the forefront of Law 278.

Second, when recently faced with a somewhat similar issue of statutory construction in a case involving a doctor who was performing her duties for the Centros Medicos Academicos Regionales ("CMAR"), the Puerto Rico Supreme Court elected to make the doctor subject to suit within the limits of Law 104 rather than completely immunizing the doctor from the medical malpractice action. *See Rodriguez-Figueroa*, 2017 WL 1449706, *7. In *Rodriguez-Figueroa*, the Puerto Rico Supreme Court addressed a Puerto Rico law, Article 7 of the CMAR Act, that specifically made reference *both* to a prior version of Paragraph Three, which established immunity for certain health professionals working for the Commonwealth of Puerto Rico, as well as to another statutory provision that effectively made the same defendant subject to suit within the limits established by Law 104. P.R. Laws Ann. tit. 32, § 3077. In choosing to subject the doctor to suit within the limits of Law 104, P.R. Laws Ann. tit. 32, § 3077, the *Rodriguez-Figueroa* court essentially reasoned that the more specific legislative text—which subjected the doctor to the limits of Law 104—prevailed over the more general statutory language that arguably immunized the doctor from suit. *See Rodriguez-Figueroa*, 2017 WL 1449706, *7; *see also Morales* v. *Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992) ("it is a commonplace of statutory construction that the specific governs the general").

As in *Rodriguez-Figueroa*, the statutory text at issue here could arguably either subject Dr. Quiles to the liability limits of Law 104 or immunize him entirely from this medical malpractice action. *See Rodriguez-Figueroa*, 2017 WL 1449706, *7. Following the Puerto Rico Supreme Court's approach in *Rodriguez-Figueroa*, this court will employ

the "general/specific canon" of construction to read harmoniously all of the statutory language in Paragraph Three. *See id.*; *see also Hernandez Maldonado*, 1991 P.R.-Eng. 735,865 ("[s]tatutes should be treated as a harmonious whole, and should be read together and not construed as divorced from their provisions"). The "general/specific canon is perhaps most frequently applied to statutes in which a general permission or prohibition is contradicted by a specific prohibition or permission," and this is essentially the statutory quagmire created by Paragraph Three's second sentence and Paragraph Three's last sentence. *See RadLAX Gateway Hotel, LLC* v. *Amalgamated Bank*, 566 U.S. 639, 132 S. Ct. 2065, 2068, 2071–72 (2012) ("the general/specific canon is not an absolute rule," but it can be employed "where general and specific authorizations exist side-by-side" to "avoid[] rendering superfluous a specific provision that is swallowed by the general one").

In this case, because the last sentence of Paragraph Three specifically singles out certain doctors of the Hospital San Antonio—the Hospital San Antonio's surgeons and the Hospital San Antonio's doctors specializing in obstetrics-gynecology—and because Dr. Quiles is a physician within that subset of health services professionals, the last sentence of Paragraph Three is more specific—and applicable—to the circumstances at issue here than is the more general language included in the second sentence of Paragraph Three. *See Rodriguez-Figueroa*, 2017 WL 1449706, *7; *see also RadLAX Gateway Hotel*, 132 S. Ct. at 2071–72; *D. Ginsberg & Sons* v. *Popkin*, 285 U.S. 204, 208 (1932) ("General language of a statutory provision, although broad enough to include it, will not be held to apply to a matter specifically dealt with in another part of the same enactment."). This construction of the statute—together with the specific text included at the forefront of Law 278's preamble—leads this court to find that Dr. Quiles is subject to suit within the limits established by Law 104. Therefore, Dr. Quiles's motion to dismiss is **DENIED**.

## CONCLUSION

For the foregoing reasons, the defendants' motions are **DENIED**. A jury trial is scheduled to begin on June 26, 2017. The parties are strongly urged to explore settlement.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 12th day of June 2017.

*S/ Bruce J. McGiverin*

BRUCE J. McGIVERIN
United States Magistrate Judge